UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JESSICA W.,[1]

                Plaintiff,

      v.

COMMISSIONER,
Social Security Administration,

                Defendant.

Case No. 3:18-cv-00930-JO

OPINION AND ORDER

JONES, Judge:

Jessica W. (Plaintiff) seeks judicial review of the final decision by the Commissioner of Social Security (Commissioner) denying her applications for disability insurance benefits and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (the Act). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Because the Commissioner's decision is not supported by substantial evidence, I REVERSE and REMAND for further proceedings.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v.*

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

Page 1 - OPINION AND ORDER

*Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). When the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's decision if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). The reviewing court may not affirm the Commissioner's decision based on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## THE ALJ'S FINDINGS ON THE FIVE-STEP SEQUENTIAL INQUIRY

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ uses a five-step sequential inquiry. *See* 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 14, 2014, the alleged onset date. Tr. 15. The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2019. Tr. 15.

At step two, the ALJ found Plaintiff had the severe impairments of multi-level spine disorder, residuals of left shoulder and arm injury, respiratory disorder, attention deficit disorder (ADD), post-traumatic stress disorder (PTSD), anxiety, depressive or bipolar disorder, and substance use disorder. Tr. 15.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 15. The ALJ then assessed Plaintiff's residual functional capacity (RFC), finding Plaintiff could perform a modified range of light work, able to lift no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. Tr. 18. She could stand, walk, or sit for 6 hours each per day. She could not climb ladders or scaffolding, and could only "occasionally perform all other postural nonexertional limitations." Tr. 18. She could not reach above her shoulders with either arm. She could not be "required to operate a commercial motor vehicle." Tr. 18. She could only occasionally be exposed to dust, gas, heat, cold, or humidity. Because of her mental impairments, she could only occasionally interact with supervisors and coworkers, and could have only "superficial or incidental contact with the public, such as sharing common areas like hallways and elevators." Tr. 18. Plaintiff could "understand, remember, and carry out no more than simple instructions," and could work only in a "routine work setting." Tr. 18. Plaintiff could "concentrate, persist, and maintain pace within such an environment so long as there is no assembly-line production." Tr. 18.

At step four, the ALJ found Plaintiff could not perform her past relevant work as a waitress, barista, and medical assistant because "all three jobs require greater than simple, unskilled work; they carry varying levels of productivity requirements; and they also require significant interaction with the public." Tr. 23.

At step five, the burden of production shifts from the claimant to the Commissioner. *Bustamonte v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) ); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2) (agency is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do"). The

Page 3 - OPINION AND ORDER

Commissioner must present evidence that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

Here, based on the testimony of a vocational expert, the ALJ found Plaintiff could perform occupations that exist in significant numbers in the national economy, including photocopy machine operator and office helper/assistant. Tr. 24. The ALJ therefore found Plaintiff was not disabled from the alleged onset date in 2014 through the date of the decision in 2017. Tr. 25.

## DISCUSSION

### I. The ALJ's Assessment of Kristopher Smith's Opinion

#### A. Smith's Opinion

Kristopher Smith, M.A., was Plaintiff's primary mental health care provider for about a year from 2015 through summer 2016. Tr. 23. Because Plaintiff lived in an isolated area, Clatsop Behavioral Health, where Smith worked, was the only readily available mental health treatment provider covered by Plaintiff's insurance. Tr. 46-47 (statement of Plaintiff's attorney at hearing).

In July 2016, Smith completed a form describing Plaintiff's mental impairments, and wrote a narrative summary to support his findings. Tr. 657-62. Smith stated that Plaintiff suffered from PTSD and major depressive disorder. Tr. 661. Smith found Plaintiff "markedly limited" in her abilities "to maintain attention and concentration for extended periods," "to make simple work-related decisions," "to sustain an ordinary routine without special supervision," "to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods," "to accept instructions and to respond appropriately to criticism from supervisors," "to get along with co-workers or peers without distracting them or exhibiting behavioral extremes," and "to respond appropriately to changes in the work setting." Tr. 658-59. The form defined "markedly limited" as precluding "the ability to perform the activity on a 'regular and continuing basis.'" Tr. 657. Smith found that Plaintiff was "moderately limited" in her abilities "to remember locations and work-like procedures," "to understand and remember very short and simple instructions," and "to maintain socially appropriate behavior." Tr. 658-59. The form defined "moderately limited" as precluding the performance of a function on a regular and continuing basis. Tr. 657.

Smith also found that Plaintiff had "marked" limitations in the activities of daily living, social functioning, and maintaining concentration. Tr. 660. The form defined "marked" as "more than moderate but less than extreme." Tr. 659. Smith stated that Plaintiff had suffered four or more episodes of decompensation because of her mental impairments, each episode of extended duration. Tr. 660.

With the form, Smith included a hand-written statement explaining his findings:

> Jessica suffers from Posttraumatic Stress Disorder and Major Depressive Disorder. She has been seen for over a year for management of her symptoms. She experiences and has been directly observed with suicidal ideation throughout the 2015-16 year. She has acted on her ideations which resulted in the need for immediate medical attention. She experiences depressed mood most of the day, nearly every day, and has been observed to be sad and tearful. She has a diminished ability to think and concentrate and indecisiveness. The Patient Health Questionnaire (PHQ 9) has been completed numerous times over the past year with results indicating the maximum or near maximum score for symptoms of depression and suicidal thought.

Tr. 661.

///

///

## B. Discussion

The ALJ gave little weight to Smith's opinion, finding that Smith had relied "almost exclusively on the claimant's anecdotal claims, which are not consistent with the record," and that "claimant's actual functioning appears more independent and stable than his assessment would allow." Tr. 23. The ALJ found that Smith's hand-written statement explaining his findings "is of little evidentiary value because it is not very legible." Tr. 23.

I conclude that substantial evidence does not support the ALJ's decision to give little weight to Smith's opinions. First, I reject the ALJ's finding that Smith's hand-written statement was "not very legible." The copy of Smith's statement in the record, which I quoted above in its entirety, is legible, with only two or three words that are at first difficult to read but decipherable in context.

By ignoring Smith's report as illegible, the ALJ failed in his duty to resolve ambiguities and conflicts in the medical evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Smith's report directly contradicts the ALJ's finding that Smith relied "almost exclusively on [Plaintiff's] anecdotal claims."[2] In the report, Smith states that Plaintiff "has been directly observed" with suicidal ideation and "to be sad and tearful." Tr. 661. Smith also stated that Plaintiff had "acted on her ideations" resulting in "the need for immediate medical attention." Tr. 661. The record supports Smith's statements. *See* Tr. 552 (April 22, 2015 report of Steven Blackthorne, M.D., noting Plaintiff's admission to emergency room for self-mutilation of her left forearm and stating Plaintiff was apparently "express[ing] her emotional pain" rather

---

[2] If a treating provider's opinions are based "to a large extent" on a claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible, the ALJ may discount the treating provider's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Page 6 - OPINION AND ORDER

than attempting suicide); Tr. 457 (July 2014 report of Kimberly Capp, D.O., stating that Plaintiff was "depressed, crying throughout the exam").

The ALJ stated that he gave little weight to Smith's opinions in part because the ALJ found Plaintiff's "actual functioning appears more independent and stable than his assessment would allow." The ALJ did not cite specific examples of Plaintiff's functioning. The ALJ did find that Plaintiff's ability "to still attend a great many medical appointments reflects good social interaction with medical and mental health providers" even though she had "isolated herself" and "failed to follow through with counseling in 2014 through mid 2015." Tr. 17. In rejecting a similar finding for lack of specificity, this court stated, "As to evidence in the record showing that Plaintiff interacted well with other medical providers, the ALJ does not cite to any specific provider or any specific interaction. The Ninth Circuit has made clear that courts may not take a general finding . . . and comb the administrative record to find specific conflicts." *Walker v. Comm'r*, No. 3:15-cv-01239-HZ, 2016 WL 3436411, at *5 (D. Or. June 15, 2016) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)). I conclude that the ALJ's reasons for discounting Smith's opinions are not supported by substantial evidence.

I note that under the regulations in effect when Plaintiff applied for benefits, Smith, who is not a physician, was not an "acceptable medical source." *See* 20 C.F.R. § 404.1527(f) (governing evaluation of opinion evidence for claims filed before March 27, 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (acceptable medical sources are generally limited to physicians and other qualified specialists). Only an "acceptable medical source" may diagnose and establish a medical impairment. *See Garrison*, 759 F.3d at 1013-14. Here, however, acceptable medical sources diagnosed Plaintiff's PTSD and depression. Tr. 455 (July 2014 report of Kimberly Capp, D.O, diagnosing "PTSD with recent decline into depression"); Tr. 674-

75 (May 2016 report of Sylvia Park, M.D., diagnosing PTSD and moderate recurrent major depression). In his role as an "other source," Smith may provide evidence on the severity of Plaintiff's mental impairments and how they affect her ability to work.

Plaintiff's reliance on an "other source" such as Smith is not unusual because claimants often lack the resources to obtain health care from acceptable medical sources. In Social Security Rule (SSR) 06-3p,[3] the Commissioner explained,

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939, at *3.

When evaluating opinions from other medical sources like Smith, SSR 06-3p advised ALJs to use the same guidelines applicable to opinions from acceptable medical sources. SSR 06-03p, 2006 WL 2329939, at *4 -*5. "For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." SSR 06-03p, 2006 WL 2329939, at *5. The Ninth Circuit has noted in providing mental health treatment, psychiatrists often rely on other medical sources to "manage the provision of psychiatric medication, receiving reports from the medical sources providing 'hands-on' treatment, without seeing the patient with any regularity." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). Similarly, the Sixth

---

[3] SSR 06-3p was rescinded by 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

Circuit has noted that "many unemployed disability applicants receive treatment at clinics that render care to low income patients by providing mental health treatment through such counselors. The practical realities of treatment for those seeking disability benefits underscores the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care." *Cole v. Astrue*, 661 F.3d 931, 939 n.4 (6th Cir. 2011). Courts have criticized ALJs for failing to consider the opinions of other medical sources. *See, e.g., Kohler v. Astrue*, 546 F.3d 260, 268-69 (2d Cir. 2008) (ALJ failed to consider opinion of nurse practitioner who was "the only medical professional available" to claimant in "very rural" area) (Sotomayor, J.). Because Smith was Plaintiff's primary mental health provider during 2015-16, and his evaluation is the most detailed in the record for that period, the ALJ's failure to consider Smith's opinions is a harmful error.

## II. Remand for Further Proceedings or an Award of Benefits

When the court finds that the ALJ has committed a harmful error, the court may modify or reverse the Commissioner's decision "'with or without remanding the case for a rehearing.'" *Garrison*, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)). "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quotation marks and citations omitted).

To determine whether to remand for further proceedings or an immediate award of benefits, the Ninth Circuit uses "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1020. The court first determines whether the "'ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Treichler v. Comm'r*, 775 F.3d 1090, 1100-01 (9th Cir. 2014) (quoting

*Garrison*, 759 F.3d at 1020). Second, if the ALJ has erred, the court should determine whether the record has been fully developed, whether outstanding issues must be resolved before determining disability, and whether further administrative hearings would be useful. *Id.* at 1101. Third, if the court concludes "that no outstanding issues remain and further proceedings would not be useful," the court may "find the relevant testimony credible as a matter of law" and "determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Id.* (citations, quotation marks, and brackets omitted). Even if a plaintiff satisfies the three-part test, the court retains discretion to remand for further proceedings if the record as a whole creates "serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, Plaintiff meets the first requirement of the credit-as-true test because the ALJ made a harmful legal error by improperly giving little weight to Smith's report. But Plaintiff has not satisfied the second part of the test because outstanding issues remain to be resolved regarding the extent of Plaintiff's mental impairments and their effect on Plaintiff's ability to function in a competitive job. When, as here, the Commissioner has a duty to further develop the record, the ALJ may keep the record open, submit questions to physicians, or order consultative examinations. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); 20 C.F.R. §§ 404.1519a, 416.919a (regulations authorizing Commissioner to purchase consultative examination). Here, on remand, the ALJ shall consider Smith's opinions, keep the record open for either party to submit supplemental evidence, and obtain a psychological evaluation of Plaintiff by an independent mental health provider.

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED January 2nd 2020.

Robert E. Jones
United States District Judge